## DAVIS HATCH, APPELLANT, *v.* BUENAVENTURA BAEZ, RESPONDENT.

*Arrest — party not liable to in this country, for acts done by him as sovereign of another nation.*

The defendant, formerly president of the Dominican Republic, while residing in New York, was arrested in an action against him by the plaintiff, for injuries sustained at the hands of defendant as sovereign of San Domingo. *Held*, that the general rule that all persons and property within the territorial jurisdiction of a State are amenable to the jurisdiction of the courts, did not apply to such a case; that the fact that the defendant had ceased to be such president, did not destroy his immunity.

The immunity of individuals from suits brought in foreign tribunals, for acts done within their own States in the exercise of the sovereignty thereof, is essential to preserve the peace and harmony of nations.

APPEAL from an order made at Special Term, vacating and setting aside an order of arrest.

*Nelson Cross*, for the appellant. It is only to the extent of his just and proper exercise of constitutional and legal powers that the president of Dominica is to be regarded as the executive of that republic. No unjust or oppressive act committed by his

direction upon any one of his subjects, or upon others entitled to protection, is in any true sense the act of the executive in his public and representative capacity, but of the *man* simply, rated as other men are rated in private stations; for in the perpetration of unauthorized offenses of this nature, he divests himself of his "regal prerogatives," and descends to the level of those untitled offenders, against whose crimes it is the highest purpose of government to afford protection. (Chitty's Pre. Crown, 5; Broom's Legal Max. [4th ed.], 40, and authorities cited in note; Vattel, 17, *et seq.;* Federalist, art. 68.) This action, being strictly personal, is transitory in its nature, and requires only the voluntary presence of the defendant within the judicial limits of our State courts to confer jurisdiction. "The judicial power of every State may be extended to all controversies respecting personal rights and contracts, or injuries to the person or property, when the party resides within the territory, wherever the cause of action may have originated." (Wheaton's El. Int. Law, part 2, ch. 2, § 20.) "Considered in an international point of view, jurisdiction, to be rightly exercised, must be founded either upon the person being within the territory, or upon the *thing* being within the territory." (Story's Confl. of Laws, § 539.) "All persons who are found within the limits of a government, whether their residence is permanent or temporary, are to be deemed subjects thereof." (Story's Col. of Laws, § 541; Henry on Foreign Law, ch. 8, p. 54, ch. 9, p. 63, ch. 10, p. 71; Wheaton, *supra.*) And "whoever comes voluntarily into a country, subjects himself to all the laws of that country, and therein to all the remedies directed by those laws, on his particular engagements." (Story's Confl., §§ 570, 571, citing authorities in notes.) It is not denied that the defendant took up his temporary residence in this State voluntarily, and that he was residing here at the time of his arrest. He indeed sought the safety of our borders and the protection of our laws. He came here a private citizen, and was clothed with no official or representative capacity when arrested at the suit of plaintiff, for damages inflicted in clear violation of law, and it is the settled rule of this country, as well as England, that suits are maintainable in the local courts, and are constantly maintained, between foreigners, or by citizens against foreigners, "where either of them is within the

territory of the State in which the suit is brought." (Story's Confl., § 542.) This doctrine has been promulgated by the courts of this State. (*Latourette* v. *Clarke*, 45 Barb., 327; *Dewit* v. *Buchanan*, 54 id., 31.)

*Evarts, Southmayd & Choate*, for the respondent. It is clear that the sovereign of another nationality is not amenable to any court of this State, for acts so done in his governmental capacity within his own territory. The municipal courts of one country cannot thus sit in review of the acts of state of another nation. This is a well recognized principle growing out of the nature of international relations. The House of Lords, in the case of *The Duke of Brunswick* (2 H. of L. Cases, 1), very recently established and illustrated it. In fact, they refused to hear the counsel for the respondent, and said that there could be no doubt of the principle, and that it applied to all acts done by the defendant in his sovereign capacity, whether right or wrong, and whether within or in excess of his constitutional power and authority. The Lord Chancellor (COLLENHAM) said that "a foreign sovereign, coming into this country, cannot be made responsible here for an act done in his sovereign character in his own country; whether it be an act right or wrong; whether according to the constitution of that country or not, the courts of this country cannot sit in judgment upon an act of a sovereign, effected by virtue of his sovereign authority abroad, an act not done as a British subject, but supposed to be done in the exercise of his authority vested in him as sovereign." It is obvious that if the High Court of Chancery in England could not entertain such questions, our own State courts of municipal jurisdiction cannot do so. It makes no difference upon the principle for which we contend that the defendant, since the occurrence of the acts complained of, has ceased to be the sovereign of San Domingo, and was, at the time of his arrest, a private individual in exile from the country over which he once exercised sovereign powers. For it is the nature of the subject-matter, which removes the question involved altogether from the domain of our municipal law, which prohibits the jurisdiction of our courts. Not only the inherent limits of municipal jurisdiction forbid it, but the universal comity of nations prohibits the courts

of one to sit in judgment upon the continental acts of another, and for that purpose to take advantage of the accidental presence on our soil of one who, at the time of the acts complained of, exercised sovereign powers, of which he has been since deprived. Imagine Gladstone visiting this country and arrested by order of one of our State courts, at the suit of some aggrieved Fenian who had been tried and convicted in Ireland, under the government of which Gladstone was premier. The plaintiff in the case supposed might make the same allegations as were contained in these moving papers, but who doubts that the detention under process of the ex-premier would be an immediate *casus belli*.

GILBERT, J. :

The wrongs and injuries of which the plaintiff complains were inflicted upon him by the government of St. Domingo, while he was residing in that country, and was in all respects subject to its laws. They consist of acts done by the defendant in his official capacity of president of that republic. The sole question is, whether he is amenable to the jurisdiction of the courts of this State for those acts. If he is, no doubt his having been served with process here gives the court jurisdiction of his person, and the action being transitory, the court has also jurisdiction of the subject-matter.

The counsel for the plaintiff relies on the general principle, that all persons, of whatever rank or condition, whether in or out of office, are liable to be sued for acts done by them in violation of law. Conceding the truth and universality of that principle, it does not establish the jurisdiction of our tribunals to take cognizance of the official acts of foreign governments. We think that, by the universal comity of nations and the established rules of international law, the courts of one country are bound to abstain from sitting in judgment on the acts of another government done within its own territory. Each State is sovereign throughout its domain. The acts of the defendant for which he is sued were done by him in the exercise of that part of the sovereignty of St. Domingo which belongs to the executive department of that government. To make him amenable to a foreign jurisdiction for such acts, would be a direct assault upon the sovereignty and independence of his country. The only remedy for such wrongs must be sought

through the intervention of the government of the person injured, or by an appeal to the sense of justice of that, which inflicted the injury.

In the case of the *Duke of Brunswick* v. *The King of Hanover*, (2 H. L. Cas., 1), the House of Lords in England held, that the defendant, who was also a British subject, and was in England exercising his rights as such subject, could not be made to account in the Court of Chancery, for acts of state whether right or wrong, done by him in Hanover, and elsewhere abroad in virtue of his authority as a sovereign, and not as a British subject. The adjudication was put upon the principle, that no court in England could entertain questions to bring sovereigns to account for acts done in their sovereign capacities abroad.

The general rule, no doubt, is, that all persons and property within the territorial jurisdiction of a State are amenable to the jurisdiction of its courts. But the immunity of individuals from suits brought in foreign tribunals for acts done within their own States, in the exercise of the sovereignty thereof, is essential to preserve the peace and harmony of nations, and has the sanction of the most approved writers on international law. It is also recognized in all the judicial decisions on the subject that have come to my knowledge. (See 2 Phil. Int. Law, 121, *et seq.;* Wheat. Int. Law [Lawrence ed.], 189, note; *The Exchange*, 7 Cranch, 1151; *The Santissima Trinidad*, 7 Wheat., 283.)

The fact that the defendant has ceased to be president of St. Domingo does not destroy his immunity. That springs from the capacity in which the acts were done, and protects the individual who did them, because they emanated from a foreign and friendly government.

The order appealed from must be affirmed with costs.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Order affirmed with costs and disbursements.